USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/23/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRADEWIND INVEST, LLC,

Plaintiff,

-v-

BRASIL HAY SERVICE, INC.,

Defendant.

26-cv-6552 (LJL)

OPINION & ORDER

LEWIS J. LIMAN, United States District Judge:

Defendant Brasil Hay Service, Inc. ("Defendant" or "Brasil Hay Service") moves, pursuant to Federal Rule of Civil Procedure 12(b)(2), for an order dismissing the complaint of Plaintiff Tradewind Invest, LLC ("Plaintiff") for lack of personal jurisdiction. Dkt. No. 29. For the reasons that follow, the motion is denied.

**BACKGROUND**

This case concerns the sale of hay and the collection of an accounts receivable for the purported purchase of hay. The facts are disputed. The Court assumes the truth of the uncontested facts as set out in the Amended Complaint and construes disputed facts presented in the parties' declarations in favor of Plaintiff as the non-moving party. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727–28 (2d Cir. 2012); *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993).

Plaintiff is a Delaware limited liability company which conducts business as a factor.[1] Dkt. No. 22 ¶¶ 3, 16. As a factor, it purchases accounts receivable of companies that sell goods or provide services. *Id.* ¶ 16. The business which assigns the accounts receivable to Plaintiff is referred to as the "factoring client" or "seller," while the purchaser that is obligated to pay the invoice that gives rise to the account receivable is referred to as the "customer" or the "account debtor." *Id.*

Brasil Hay Service is a California corporation with its principal place of business at 10885 7th Avenue, Hanford, California. Dkt. No. 22 ¶ 7; Dkt. No. 31 ¶ 3. The company's business consists primarily of retrieving hay bales from alfalfa fields in California's Central Valley and stacking those bales for hauling and transport. Dkt. No. 31 ¶ 4. Joe L. Brasil represents himself to be the sole shareholder, sole officer, sole director, and sole agent for service of process of Brasil Hay Service. *Id.* ¶ 2.

Non-party Brasil Hay Sales, Inc. ("Brasil Hay Sales") is a California corporation located at 2604 N. Castle Drive, Hanford, California. Dkt. No. 32 ¶ 2. Kevin Brasil, the brother of Joe L. Brasil, represents himself to be the sole shareholder, sole officer, sole director, and sole agent for service of process of Brasil Hay Sales. *Id.* ¶ 2; Dkt. No. 31 ¶ 16.

Plaintiff is party to an Account Receivable Purchase Agreement ("Purchase Agreement") or factoring agreement with Williams Hay & Commodities LLC ("Williams Hay"). Dkt. No. 22-1 at 2. Matthew Williams is the principal of Williams Hay. Dkt. No. 32 ¶ 7. Pursuant to the Purchase Agreement, Williams Hay sells and assigns its accounts receivable on orders placed by Defendant to Plaintiff "with full authority to direct payment on all invoices." Dkt. No. 22-1 at 2.

---

[1] A factor is "a financial intermediary that purchases receivables of a company to help the company finance its operations." *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 2015 WL 6125526, at *2 (S.D.N.Y. Oct. 16, 2015).

Plaintiff is also a party to a Notice of Sale and Assignment of Accounts Receivable, New Payee's Payment Remittance Instructions ("Notice of Assignment"), dated June 12, 2025. *Id.* The Notice of Assignment was circulated by Williams Hay and acknowledged and agreed to by Plaintiff on June 17, 2025. *Id.* The Notice of Assignment is addressed to Brasil Hay Service and advises that Williams Hay is a party to the Purchase Agreement and that, pursuant to that agreement, all of Williams Hay's account receivable on orders placed by Brasil Hay Service are sold and assigned to Plaintiff "as 100% owner with full authority to direct payment on all invoices." *Id.* The Notice of Assignment contains payment instructions that can only be altered or verified in writing by Plaintiff, and it further advises that Plaintiff is Williams Hay's "attorney-in-fact with respect to all [its] existing and future accounts receivable and is fully authorized to act on [its] behalf with respect to the accounts receivable arising from orders placed by [Brasil Hay Service] with [Williams Hay]." *Id.* The Notice of Assignment is addressed to Brasil Hay Service at the 10885 7th Avenue address in Hanford, California. *Id.* Plaintiff mailed a copy of the Notice of Assignment to that address and additionally sent a copy by e-mail to Kevin Brasil. Dkt. No. 22 ¶¶ 19–20.

The Notice of Assignment asks Brasil Hay Service to confirm receipt of the Notice of Assignment by signing a separate signature page and emailing it to Plaintiff. Dkt. No. 22-1 at 2–3. The signature page contains an acknowledgement of the sale and assignment of all Williams Hay accounts receivable to Plaintiff and the agreement that payment on future invoices will be made as directed in the Notice of Assignment. *Id.* at 3. It also contains a forum selection clause:

> We agree that our obligations on the underlying sale of goods transaction giving rise to the accounts receivable and our obligations following receipt of this notice of assignment are enforceable under the laws of any State within the United States where we maintain an office location and we submit to the jurisdiction of the courts within those particular states.

*Id.* The signature page was returned to Plaintiff with a signature date of June 18, 2025; it was

signed by Kevin Brasil, who identified as the owner of Brasil Hay Sales. *Id.*

In accordance with the Notice of Assignment, an invoice, dated June 16, 2025, and identified as invoice number 1031, was issued by Williams Hay, creating an obligation and commitment for Brasil Hay Service to provide payment of $175,500.00 for an order of alfalfa hay (the "Invoice"). Dkt. No. 22 ¶ 21. Brasil Hay Service is listed as the "bill to" and "ship to" party with the address of 10885 7th Avenue, Hanford, California. Dkt. No. 22-2 at 2.

Thereafter, Plaintiff received a Proof of Delivery (the "POD"), dated June 17, 2025, which conforms with the Invoice with regard to the purchase date, the description of the goods, and the quantity of the goods. Dkt. No. 22 ¶ 22; Dkt. No. 22-3 at 2. The POD confirms that 1300 tons of alfalfa hay were shipped to Brasil Hay Service at 10885 7th Avenue, Hanford, California. Dkt. No. 22-3 at 2. The POD contains what purports to be the signature of Kevin Brasil on behalf of Brasil Hay Service. *Id.*

Also on June 17, 2025, Plaintiff received a signed letter from Brasil Hay Service, dated June 12, 2025 (the "Confirmation Letter"), which confirmed the method of communication going forward with Plaintiff with respect to the transaction reflected in the Invoice. Dkt. No. 22 ¶ 23. The Confirmation Letter confirms that Brasil Hay Service uses the email address hayhog@yahoo.com for its business transactions and agrees that "[a]ny notice, request, or other communication can be sent to and from the above-mentioned E-Mail address with legally binding effect." Dkt. No. 22-4 at 2. The customer is identified as Brasil Hay Service and it contains the signature of Kevin Brasil as "owner" and "authorized signatory." *Id.* The email address hayhog@yahoo.com corresponds to the email address listed for Kevin Brasil on the signed Notice of Assignment, Dkt. No. 22-1 at 3, and Kevin Brasil has acknowledged in this litigation that the email address belongs to him, Dkt. 32 ¶ 18.

On June 20, 2025, Plaintiff transmitted a Verification Letter to Kevin Brasil, asking Brasil Hay Service to confirm on the Verification Letter that the Invoice was correct and that the payment would be made to Plaintiff by the due date. Dkt. No. 22 ¶ 25. The Verification Letter is addressed to Brasil Hay Service at 10885 7th Avenue, Hanford, California, and attaches the Invoice reflecting $175,500.00 due from Brasil Hay Service on July 16, 2025. Dkt. No. 22-5 at 2, 4. The Verification Letter also contains a choice-of-law and forum-selection provision. That provision states:

> In the event of a dispute, the laws of the State of New York shall govern. You hereby consent to the jurisdiction of all courts in the County of New York, State of New York. You waive the right to trial by jury in any legal action between [Plaintiff] and you.

*Id.* at 2.

Kevin Brasil returned the executed Verification Letter to Plaintiff on June 23, 2025. Dkt. No. 22 ¶ 25. The signature page reflects that the Verification Letter was "[a]greed and [a]cknowledged [by] Brasil Hay Service, Inc." Dkt. No. 22-5 at 3. The name of Kevin Brasil is typed into the line corresponding to "[p]rint [n]ame & [p]osition" with the email address hayhog@yahoo.com also entered. *Id.* While the letter states that, "[i]n order to simplify matters[,] your dated and legally binding signature and stamp on this letter, returned to us, shall be sufficient," the Verification Letter does not bear a stamp of Brasil Hay Service. *Id.*

Brasil Hay Service did not make payment on the Invoice as required by July 16, 2025. Dkt. No. 22 ¶ 26. On at least a dozen occasions between July 21, 2025, and November 17, 2025, Plaintiff sent written demands for payment of the Invoice to Brasil Hay Service at the hayhog@yahoo.com email address. *Id.* Brasil Hay Service did not respond to any of the written demands for payment. *Id.*

On August 4, 2025, Matthew Williams emailed Plaintiff that Plaintiff would receive a

payment on the Invoice from Williams Hay in about a week. *Id.* ¶ 27. When asked why Williams Hay would make the payment in place of Brasil Hay Service, Williams responded that Brasil Hay Service had already paid him on the Invoice. *Id.* However, Williams Hay never made a payment to Plaintiff. *Id.* Accordingly, Plaintiff subsequently sent demands for payment to Williams Hay while also sending the same demands for payment to Brasil Hay Service. *Id.* ¶ 29.

In or about early September 2025, after it had made repeated and unsuccessful demands for payment from both Williams Hay and Brasil Hay Service, Plaintiff reached out to Kevin Brasil by telephone, using the telephone number identified by Kevin Brasil in the underlying transaction documents. *Id.* ¶ 30; Dkt. No. 36 ¶¶ 3–4. Kevin Brasil answered the call and confirmed his identity. Dkt. No. 22 ¶ 30; Dkt. No. 36 ¶ 3. During the call, Plaintiff reminded Kevin Brasil of Brasil Hay Service's obligation to make payment under the Invoice, and Kevin Brasil acknowledged the Invoice and the underlying transaction, and responded that he had settled the Invoice by returning the alfalfa hay to Williams Hay. Dkt. No. 22 ¶ 30; Dkt. No. 36 ¶ 4. A few minutes after Plaintiff's call with Kevin Brasil, Plaintiff received a call from Matthew Williams. Dkt. No. 22 ¶ 31. Matthew Williams stated that Williams Hay had received the alfalfa hay, resold it to another buyer, and offered to pay Plaintiff. Dkt. No. 22 ¶ 31. To date, Plaintiff has not been paid on the Invoice and the obligation to Plaintiff remains outstanding. Dkt. No. 36 ¶ 6.

For his part, Joe L. Brasil, on behalf of Brasil Hay Service, states that Brasil Hay Service never ordered, purchased, received, accepted, returned or paid for the hay identified in the Invoice and never received any goods, products, funds, services, or other benefit arising from any transaction alleged in Plaintiff's pleadings. Dkt. No. 31 ¶¶ 13–14. And though Kevin Brasil

acknowledges that Brasil Hay Sales has engaged in transactions involving the purchase of hay from Williams Hay, he denies ever acting on behalf of Brasil Hay Service. Dkt. No. 32 ¶ 6.

## PROCEDURAL HISTORY

Plaintiff filed this case in New York State Supreme Court, New York County, on December 2, 2025, alleging that Brasil Hay Service breached its contract with Plaintiff by failing to pay the Invoice. Dkt. No. 1; Dkt. No. 1-1. Defendant removed the case to this Court on July 31, 2026, under 28 U.S.C. §§ 1441 and 1446, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2] Dkt. Nos. 1, 6. After Defendant filed a motion to dismiss on August 7, 2026, Dkt. No. 12, Plaintiff filed an amended complaint on August 21, 2026, Dkt. No. 22.[3] The amended complaint brings claims for breach of contract, unjust enrichment, and accounts stated. *Id.* ¶¶ 35–55.

Defendant filed this motion to dismiss on September 15, 2026. Dkt. No. 28. Defendant also filed a memorandum of law in support of the motion to dismiss and declarations from Joe L. Brasil and Kevin Brasil. Dkt. Nos. 30–32. On September 29, 2026, Plaintiff filed a memorandum of law in opposition to the motion to dismiss and a declaration from John Bettex (the "Bettex Declaration"). Dkt. Nos. 35–36. On October 6, 2026, Defendant filed a reply memorandum in further support of the motion to dismiss. Dkt. No. 39.

## DISCUSSION

Defendant asks that the Court dismiss this action without prejudice for lack of personal jurisdiction. Dkt. No. 30. It claims that the Court does not have general or specific personal

---

[2] Defendant's notice of removal was rejected for a signature error. Dkt. No. 1. Defendant successfully refiled the notice on August 4, 2026. Dkt. No. 6.

[3] Plaintiff's amended complaint supersedes and replaces the original complaint. Accordingly, the motion to dismiss at Dkt. No. 12 is denied as moot.

jurisdiction over Brasil Hay Service and that it did not consent to jurisdiction in New York. In particular, Defendant argues that Kevin Brasil did not possess authority to bind Brasil Hay Service to the New York forum selection clause in the Verification Letter and that, even if Kevin Brasil had such authority, Kevin Brasil did not assent to the forum selection clause and the clause is unenforceable on other grounds, including fraud and overreach. *Id.*; Dkt. No. 39.

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life. Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). If an evidentiary hearing is not held, a plaintiff need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists. *Id.* at 84–85. "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A. Institucion de Banca Multiple*, 92 F.4th 450, 456 (2d Cir. 2024) (alteration incorporated) (quoting *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 81–82 (2d Cir. 2018)). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid*, 702 F.3d at 727 (internal quotation marks omitted); *see also Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 637 (2d Cir. 2023). And where the "parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor." *Seetransport*, 989 F.2d at 580 (internal quotation marks omitted).

The denial of a Rule 12(b)(2) motion is a provisional ruling as to personal jurisdiction and, in many cases, is not a court's final word on the issue. A defendant can "move for summary judgment on the issue of personal jurisdiction following any jurisdictional discovery." *Stines v. Sanchez*, 2023 WL 3479748, at *2 (S.D.N.Y. May 16, 2023). And where factual disputes preclude the resolution of personal jurisdiction at summary judgment, a court "may decide to hold a pre-trial evidentiary hearing to resolve the issue." *Persh v. Peterson*, 2017 WL 1843292, at *2 (S.D.N.Y. May 5, 2017). In some cases, it is even appropriate to "leave the jurisdictional issue for . . . trial," as is the case when the "jurisdictional dispute is interwoven with the underlying merits" of the suit. *Dorchester Fin. Sec.*, 722 F.3d at 87 (internal quotation marks omitted).

Plaintiff predicates its claim of personal jurisdiction on the consent to jurisdiction in the Verification Letter. The Verification Letter, which was signed by Kevin Brasil ostensibly on behalf of Brasil Hay Service, states "[y]ou hereby consent to the jurisdiction of all courts in the County of New York, State of New York." Dkt. No. 22-5 at 2.

Parties may consent to personal jurisdiction by executing an enforceable forum selection clause. *Burger King Corp. v. Rudzewicz*, 471 US. 462, 472 n.14 (1985); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."); *Stralia Mar. S.A. v. Praxis Energy Agents DMCC*, 431 F. Supp. 3d 366, 372 (S.D.N.Y. 2010). "Where an agreement contains a valid and enforceable forum selection clause . . . it is not necessary to analyze jurisdiction under [the forum state's] long-arm statute or federal constitutional requirements of due process" as to the parties bound by that agreement. *Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de. C.V.*, 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010). "Rather, assenting to '[a]n enforceable forum

selection clause amounts to consent to personal jurisdiction.'" *Raspberry Holdings LLC v. NextBank Int'l Inc.*, 2025 WL 438270, at *4 (S.D.N.Y. Feb. 7, 2025) (quoting *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *6 (S.D.N.Y. Mar. 10, 2021)). "Courts will uphold a forum selection clause if (1) it has been reasonably communicated to the parties; (2) it was not obtained through fraud or overreaching; and (3) its enforcement would not be unreasonable and unjust." *Smart Recovery Techs. LLC v. Supplies Plus MI LLC*, 2026 WL 787788, at *6 (S.D.N.Y. Mar. 20, 2026) (citing *D.H. Blair*, 462 F.3d at 103). "[Q]uestions of enforceability are resolved under federal law, while interpretive questions—questions about the meaning and scope of a forum selection clause—are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause." *Id.* (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 224 (2d Cir. 2014)). The Court concludes that it has personal jurisdiction over Defendant at the pleading stage because Plaintiff has adduced facts that satisfy its obligation to make a sufficient *prima facie* showing that Kevin Brasil had authority to bind Brasil Hay Service with regard to the forum selection clause in the Verification Letter; Kevin Brasil assented to the forum selection clause; and the forum selection clause is not otherwise unenforceable.

## I. Authority to Bind Brasil Hay Service

Defendant argues initially that Kevin Brasil did not have authority to bind Brasil Hay Service to the forum selection clause. In support of that argument, it proffers the declaration of Joe L. Brasil that Kevin Brasil has never been an officer, director, employee, agent, managing agent, general agent, cashier or assistant cashier, or authorized representative of Brasil Hay Service and has never been authorized to negotiate contracts, enter transactions, make representations, incur obligations, accept service of process, or otherwise act on behalf of Brasil

Hay Service. Dkt. No. 21 ¶¶ 16–17. Joe L. Brasil avers that he is the sole shareholder, sole officer, sole director, and sole agent for service of process of Brasil Hay Service and was the sole agent for service at all relevant times. *Id.* ¶¶ 2, 21. He further avers that Kevin Brasil was never held out by Brasil Hay Service as authorized to act on its behalf. *Id.* ¶ 18.

Defendant also offers a declaration from Kevin Brasil. Dkt. No. 32. Kevin Brasil claims that he was never authorized to act on behalf of Brasil Hay Service. *Id.* ¶ 5. He also states that he did not affix any signature, seal, or stamp to the Verification Letter; that his signature on the POD is forgery; and that, to the extent the materials sent to him referred to Brasil Hay Service, he did notice the reference at the time. *Id.* ¶¶ 9, 13–14. He concedes, however, that he maintained the email address and phone number at which Plaintiff contacted him. *Id.* ¶ 18.

Plaintiff has made a sufficient *prima facie* showing that Kevin Brasil possessed actual authority to bind Brasil Hay Service to the forum selection clause. "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003) (internal quotation marks omitted). Under New York law, "[a]n agent's authority may be apparent or actual."[4] *Skatteforvaltningen v. Markowitz*, 190 F.4th 62, 92 (2d Cir. 2026). "Actual authority arises from a direct manifestation of consent from the principal to the agent." *New York Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F. Supp. 3d 216, 232 (S.D.N.Y. 2020) (internal quotation marks omitted). Actual authority need not be conveyed or evidenced by a writing. It "may be express or implied" and can be created by words spoken by the principal to the agent as well as by the

[4] The parties both proceed on the basis that, where an issue is not governed by federal law, New York law applies; the Court therefore applies New York law to those issues. *See Boule v. Credit One Bank*, 2016 WL 3015251, at *2 n.1 (S.D.N.Y. May 11, 2016) (Sullivan, J.).

principal's conduct. *Id.* (internal quotation marks omitted). "Commonly, an outsider will not be privy to the details of what conversation or conduct took place between a principal and the agent. Thus, courts have recognized that [at the pleading stage], a plaintiff need only raise a sufficient inference that some sort of agency relationship existed between the purported principal and agent." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344 (S.D.N.Y. 2010) (internal quotation marks omitted and alteration incorporated); *see also Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 875 F. Supp. 2d 264, 269 (S.D.N.Y. 2012) ("To adequately allege an actual agency relationship, a plaintiff need only allege facts sufficient to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority."), *aff'd sub nom. Skanga Energy & Marine Ltd. v. Petroleos de Venezuela S.A.*, 522 F. App'x 88 (2d Cir. 2013); *accord Steinhardt v. Shadow*, 2018 WL 4278335, at *3 (S.D.N.Y. Apr. 11, 2018) (Sullivan, J.) (denying motion for summary judgment as to personal jurisdiction where circumstantial evidence of an agency relationship created a factual dispute with purported principal's denial of such a relationship).

Here, the uncontroverted allegations in Plaintiff's complaint, combined with the documents which are attached to that pleading and the facts presented in the Bettex Declaration, are sufficient to establish, prior to any factfinding, that Kevin Brasil acted with actual authority from Brasil Hay Service. First, Kevin Brasil's signature or typed name appears on the Notice of Assignment, Confirmation Letter, and Verification Letter, and Plaintiff sent each of those documents to Kevin Brasil's email address which Kevin Brasil at the time confirmed (via the Confirmation Letter) was the correct email address for Brasil Hay Service. Dkt. Nos. 22-1, 22-4, 22-5. In the Confirmation Letter and Verification Letter in particular, Kevin Brasil identifies himself as a representative of Brasil Hay Service. Defendant does not question the authenticity

of these documents, and Kevin Brasil does not dispute that he affixed his signature or typed name to these documents. Those facts alone create a plausible inference that Kevin Brasil was vested with actual authority. Second, Plaintiff mailed the Notice of Assignment to Brasil Hay Service's mailing address and did not receive any response other than the form completed with Kevin Brasil's name and contact information. Dkt. No. 22 ¶¶ 19–20. Third, Plaintiff received the POD indicating that the alfalfa hay was delivered to Brasil Hay Service at its mailing address. Dkt. 22 ¶ 22; Dkt. 22-3. Kevin Brasil claims that the POD is a forgery and it is not his signature that appears on the document. Dkt. 32 ¶ 14. But it is not disputed that the POD was sent to Plaintiff, and the Bettex Declaration represents that Kevin Brasil acknowledged on the phone to Plaintiff that the hay had been received. Dkt. No. 36 ¶ 4. There is at least a factual question at this stage whether Kevin Brasil's statement is to be credited and whether the POD is, in fact, a forgery. Fourth and relatedly, when called by Plaintiff, Kevin Brasil did not refute that Brasil Hay Service engaged in the underlying transaction with Williams Hay Service or that Brasil Hay Service had an obligation to pay the Invoice. *Id.* ¶¶ 4–5. He acknowledged the Invoice and the underlying transaction. Minutes later, Plaintiff was called by Mattthew Williams who offered to pay the Invoice. Dkt. No. 22 ¶ 31. It is no great leap from those facts to assume—as the Court does—that Kevin Brasil understood himself to be acting with authority from Brasil Hay Service and that when Williams called Plaintiff he did so after receiving a call from Kevin Brasil, on behalf of Brasil Hay Service. And from all of these facts, it is a plausible inference that Kevin Brasil was vested with actual authority by Brasil Hay Service to act on behalf of Brasil Hay Service. After all, Kevin Brasil is Joe L. Brasil's brother. On the record before it, the Court is entitled to presume that Kevin Brasil would not have signed so many documents and acted on behalf of Brasil Hay Service without checking with his brother and

making sure he had the authority to do so. It is, of course, possible that Kevin Brasil did not have authority from Joe L. Brasil and that he was acting on his own and without authority when he signed on behalf of Brasil Hay Service as he attests in his declaration. But, in assessing the *prima facie* showing, the Court is not required to accept the self-serving testimony of the Brasil brothers in light of the particular uncontroverted allegations and attested facts that Plaintiff presents of "circumstantial evidence [of an agency relationship] to the contrary."[5] *Steinhardt*, 2018 WL 4278335, at *3.

## II. Assent to the Forum Selection Clause

Defendant further argues that the forum selection clause is not binding because, even assuming that Kevin Brasil had the authority to bind Brasil Hay Service, Kevin Brasil did not and could not assent to the forum selection clause. This argument contains two subparts. First, Kevin Brasil did not accept the Verification Letter based on the Verification Letter's expressed terms. Dkt. 30 at 14–15; Dkt. 39 at 5. Second, the Verification Letter did not manifest assent to the forum selection clause because it was inconsistent with other Tradewind documents. Dkt. 30 at 15; Dkt. 39 at 5–7. Neither argument is availing.

Defendant contends that Kevin Brasil did not assent to the forum selection clause as he did not sign, date, or stamp the Verification Letter. Dkt. No. 30 at 14–15; Dkt. No. 39 at 5. Though Defendant does not frame its argument in such terms, the Court views the Verification Letter as akin to a modification to the underlying contract for hay entered into by Brasil Hay Service and Williams Hay and which Williams Hay assigned to Plaintiff. "[A]s with the

[5] Because the Court concludes that Plaintiff presented a *prima facie* case that Kevin Brasil possessed actual authority to bind Brasil Hay Service to the forum selection clause, it need not consider Plaintiff's alternative arguments regarding apparent authority and ratification. Dkt. No. 35 at 15–16.

formation of [a] contract . . ., modification . . . requires some sort of mutual assent." *Belsito Commc'ns, Inc. v. Dell, Inc.*, 2013 WL 4860585, at *4 (S.D.N.Y. Sept. 12, 2013); *see also Gem City Mgmt. Inc. v. Rinde*, 2022 WL 4133429, at *5 (S.D.N.Y. Sept. 12, 2022) ("A modification of a contract requires the mutual assent of both . . . parties to the contract." (internal quotation marks omitted)). But Defendant's argument is predicated on a misreading of the Verification Letter. The Verification Letter does not state what Defendant implies that it does. The Verification Letter merely states that "[i]n order to simplify matters[,] your dated and legally binding signature and stamp on this letter, returned to us, shall be sufficient." Dkt. No. 22-5 at 3. It does not state that the only way that Brasil Hay Service could consent to the Verification Letter was by a signature and stamp. It is not disputed that Kevin Brasil affixed his typed name to the Verification Letter as acknowledging and agreeing to its terms on behalf of Brasil Hay Service and that he returned it to Plaintiff. *Id*. To gauge whether a party accepts a contract (or a contractual modification), a court looks to "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds," rather than "any single act" to determine whether the parties entered a contractual agreement. *Brown Bros. Elec. Contractors v. Beam Const. Corp.*, 361 N.E.2d 999, 1001 (N.Y. 1997). And under that standard, Kevin Brasil's acts in affixing his name to the letter as acknowledging and agreeing to its terms on behalf of Brasil Hay Service and returning it to Plaintiff on behalf of Brasil Hay Service gives rise to at least an issue of fact as to whether Brasil Hay Service consented to modifying the underlying contract and thus to jurisdiction.

Defendant also argues that the forum selection clause in the Verification Letter is inconsistent with the consent to forum selection clause in the Notice of Assignment, and, as a result, the Verification Letter was not reasonably communicated in a way that allows for clear

and knowing consent. Dkt. 30 at 15; Dkt. 39 at 5–7. But, as a matter of basic contract law, the Verification Letter is not inconsistent with the Notice of Assignment.[6] Defendant's argument is again based on an erroneous premise. It is black letter law that "[a]n agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion." *City of New York v. Pullman Inc.*, 477 F. Supp. 438, 442 n.11 (S.D.N.Y. 1979) (Weinfeld, J.); *accord John Boutari & Sons, Wines & Spirits, S.A. v. Attiki Importers & Distributors Inc.*, 22 F.3d 51, 52–53 (2d Cir. 1994); *Bank Leumi USA v. Ehrlich*, 2013 WL 12183223, at *5 (S.D.N.Y. Feb. 19, 2013), *order vacated on denial of reconsideration*, 2014 WL 12661620 (S.D.N.Y. Feb. 18, 2014) (Nathan, J.). The forum selection clauses in both the Notice of Assignment and Verification Letter are permissive and not exclusive. In the former, Defendant "submit[s] to the jurisdiction of the courts within those particular states [in which Brasil Hay Service] maintain[s] an office location." Dkt. No. 22-1 at 3. And, in the latter, Defendant "consent[s] to the jurisdiction of all courts in the County of New York, State of New York." Dkt. No. 22-5 at 2. Neither of those clauses precludes the other or, for that matter, the exercise of jurisdiction in any other forum where it is "otherwise appropriate."[7] *Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d. Cir. 2011)

---

[6] Defendant's argument with regard to the purported inconsistency of the Verification Letter and Notice of Assignment relates to the issue of whether the forum selection clauses are "mandatory or permissive," an "interpretive question" to which courts "normally apply the body of law selected in an otherwise valid choice-of-law clause." *Martinez*, 740 F.3d at 217–18. The Verification Letter has a New York choice-of-law clause, Dkt. No. 22-5 at 2, and the Notice of Assignment does not contain any choice-of-law clause. The Court, however, once again follows the parties' direction and applies New York law to interpreting both clauses. *See supra* note 4.

[7] For similar reason, the Court disagrees with Defendant's presentation of the forum selection clause in the Notice of Assignment as more "specific" than the one in the Verification Letter and thus controlling. Dkt. No. 39 at 6. That principle applies only when the two provisions are actually in "conflict." *Tishman & Lipp, Inc. v. Delta Airlines*, 275 F. Supp. 471, 480 (S.D.N.Y. 1967), *aff'd sub nom. Tishman & Lipp, Inc. v. Delta Air Lines*, 413 F.2d 1401 (2d Cir. 1969); *see also* 11 Williston on Contracts § 32.10 (2026) ("When general and specific clauses conflict, the

(quoting *Phillips*, 494 F.3d at 386).[8] Thus, at the pleading stage, Plaintiff has sufficiently demonstrated that Defendant assented to the forum selection clause.

## III. The Enforceability of the Forum Selection Clause

Finally, Defendant raises a series of arguments that challenge the enforceability of the otherwise reasonably communicated forum selection clause. None are persuasive.

First, Defendant contends that the Verification Letter is not enforceable because it is not supported by consideration. Dkt. No. 39 at 1, 3–5. Defendant relies on *Capstone Business Funding, LLC v. Shames Construction Co., Ltd.*, 169 N.Y.S.3d 599 (1st Dep't 2022), in which the Appellate Division, First Department held that an estoppel letter signed by an account debtor stating that invoices were valid and that no defenses would apply was not enforceable by a factor because it was not supported by new consideration. Dkt. No. 39 at 3–5. The argument is raised only in reply and not in Defendant's opening memorandum and thus is not properly considered. *See Heiden v. New York City Health & Hosps. Corp.*, 2023 WL 171888, at *20 n.16 (S.D.N.Y. Jan. 11, 2023). Even if the argument were properly considered, however, it is without merit. Neither the Supreme Court nor the Second Circuit has ever held that consideration is a prerequisite for the enforceability of a forum selection clause. *See Phillips*, 494 F.3d at 383–84

specific clause governs the meaning of the contract.").

[8] Defendant, notably, does not and cannot raise the related argument that the forum selection clause was not "reasonably communicated" to it. *Phillips*, 494 F.3d at 383. "The Second Circuit has held that a forum selection clause is reasonably communicated even when in 'fine print.'" *HSM Holdings*, 2021 WL 918556, at *7 (quoting *Effron v. Sun Line Cruises*, 67 F.3d 7, 9 (2d Cir. 1995)). There is nothing hidden, unclear, or ambiguous about the language of the forum selection clause in the Verification Letter. The document—including the signature page—is two pages and states clearly on the first page that, in the event of a dispute, Brasil Hay Service consents "to the jurisdiction of all courts in the County of New York, State of New York." Dkt. No. 22-5 at 1; *see, e.g.*, *Bense v. Interstate Battery Sys., Inc.*, 683 F.2d 718, 722 (2d Cir. 1982) (holding enforcement of forum selection clause reasonable where "the contract consist[ed] of two easily readable pages[ and] the forum-selection clause in the contract [was] not in fine print or hidden in a mass of unrelated verbiage").

(describing the "four-party analysis" governing the enforceability of forum selection clauses); *cf.* *Fuld v. Palestine Liberation Org.*, 578 F. Supp. 3d 577, 595 n.10 (S.D.N.Y. 2022) ("Defendants do not cite, and the Court has not found, any case holding that such receipt of a benefit is a necessary condition" for deemed consent.), *aff'd*, 82 F.4th 74 (2d. Cir. 2023), *rev'd and remanded on other grounds*, 606 U.S. 1 (2025). That is because "considerations of fairness and due process that govern personal jurisdiction are distinct from the legal rules governing contracts." *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 380 (S.D.N.Y. 2001) (Lynch, J.) (identifying as an example that "voluntary consent to jurisdiction need not be supported by consideration" (citing 4 Wright & Miller, Federal Practice and Procedure § 1065 (2026) (discussing the doctrine of "implied consent" as a traditional basis for jurisdiction))). The dictates of fairness allow parties in all sorts of circumstances to waive (*i.e.*, "intentional[ly] relinquish[)] . . . a known right" without necessarily receiving anything in return, *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (internal quotation marks omitted), and a party's consent to jurisdiction is merely a manifestation of that party "waiv[ing]" their due process rights.[9] *Burger King*, 471 U.S. at 472 n.14.

[9] The result here is no different if the Court were to analyze the issue under traditional contract law. In that case, as explained above, the Verification Letter's forum selection clause is, in effect, a modification to the underlying contract for hay that Williams Hay allegedly entered into with Brasil Hay Service. "While consideration is required for a contract to be valid, a modification to a contract need not be supported by additional consideration if the modification is 'in writing and signed by the party against whom it is sought to enforce the change or modification.'" *Stralia Mar. S.A. v. Praxis Energy Agents DMCC*, 431 F. Supp. 3d 366, 371 (S.D.N.Y. 2019) (alteration incorporated) (quoting N.Y. Gen. Oblig. Law § 5-1103). To the extent that Defendant disputes that Kevin Brasil's placement of his typed name on the Verification Letter does not constitute a signature for purposes of the New York statute, that is an issue of fact not appropriate for resolution at this stage. *See* N.Y. Gen. Const. Law § 46 (defining the statutory term "signature" to "include[] any memorandum, mark or sign, written, printed, stamped, photographed, engraved or otherwise placed upon any instrument or writing with intent to execute or authenticate such instrument or writing").

Defendant also argues that the forum selection clause was procured through fraud and is overreaching. Dkt. No. 39 at 7–9. Defendant's fraud argument is based on the declaration of Kevin Brasil, who declares that Matthew Williams represented Plaintiff's paperwork as merely a "sample," characterized it as generic paperwork intended only to confirm formatting and facilitate future transactions, and instructed that it could be disregarded. *Id.* at 8; Dkt. No. 32 ¶¶ 7–8, 10. Kevin Brasil states that he therefore understood the documents to be administrative forms and examples, not legally operative agreements creating independent obligations or requiring litigation in New York. Dkt. No. 32 ¶¶ 7–8. And Defendant contends that the forum selection clause is overreaching because Brasil Hay Service received no funds or goods from Plaintiff, negotiated none of the alleged assignment terms, and had no direct commercial relationship with Plaintiff. Dkt. No. 39 at 8–9.

The exception to enforceability on the ground that a forum selection clause is "unreasonable and unjust" or the product of "fraud or overreaching . . . is interpreted narrowly, rendering forum selection clauses unreasonable only: (1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.'" *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 711 (2d Cir. 2010) (internal quotation marks omitted); *see also Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 721 n.7 (2d Cir. 2013).

Defendant does not satisfy those standards. That Matthew Williams may have represented to Kevin Brasil that the Verification Letter was only a "sample" and that Kevin Brasil did not understand them to have legal effect does not make the agreements a product of

fraud. Matthew Williams was not Plaintiff's employee and was therefore in no position to represent Plaintiff's intent as to the documents it sent to Defendant. Nor does Defendant present any evidence that Plaintiff conspired with Matthew Williams to misrepresent the documents to Kevin Brasil. *Cf. Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 674 n.3 (S.D.N.Y. 2009) (explaining, under New York law, that, "in order to state a claim for fraudulent inducement, the person making the representations must be, or acting on behalf of, the other party to the contract" and that "[f]raud by a third party is not effective to vitiate contractual obligations" (internal quotation marks omitted)). Though Defendant argues that Plaintiff stands in the shoes of its assignor and thus must be subject to the same defenses that could have been asserted against the assignor, that argument conflates the issue of merits with the issue of jurisdiction. Plaintiff stands in Williams Hay's shoes solely as to the assignment of the Invoice, not with regard to any subsequent statement Williams Hay made after the assignment took place as Plaintiff sought to modify the underlying agreement. Moreover, the Verification Letter is clear and unambiguous, and Kevin Brasil's assertion that he failed to read the documents is "immaterial as a matter of law, because a signatory to a contract is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed." *Sun Forest Corp.*, 152 F. Supp. 2d at 382 (internal quotation marks omitted); *see also Horvath v. Banco Comercial Portugues, S.A.*, 2011 WL 666410, at *4 (S.D.N.Y. Feb. 15, 2011), *aff'd*, 461 F. App'x 61 (2d Cir. 2012).

Nor is it sufficient for Defendant to argue that the forum selection clause is overreaching because it had no direct commercial relationship with Plaintiff prior to being presented with the forum selection clause in the Verification Letter. Dkt. No. 39 at 8. That will be true in all cases where a factor purchases a seller's accounts receivable, and Defendant cites no authority for the

proposition that a factor and an account debtor cannot agree to a forum selection clause. Likewise, though Defendant complains that it did not negotiate with Plaintiff regarding the forum selection clause, *id.*, it does not suggest that it ever attempted but was somehow barred from doing so.

Finally, the forum selection clause is not unreasonable because it requires Defendant, a California company, to litigate in New York. *Id.* There is a reasonable likelihood that Defendant will not have to travel to New York prior to trial. Most litigation is conducted by way of paper, and depositions can be taken remotely. *See* Fed. R. Civ. P. 30(b)(4); *see also Sec. & Exch. Comm'n v. Aly*, 320 F.R.D. 116, 119 (S.D.N.Y. 2017) (explaining that "[p]arties routinely conduct depositions via videoconference, and courts encourage the same, because doing so minimizes travel costs" (alteration in original and internal quotation marks omitted)).

Defendant has thus failed to show that the forum selection clause was obtained through fraud or overreach, or is otherwise unreasonable or unjust.[10]

## CONCLUSION

The motion to dismiss for lack of personal jurisdiction is denied. Plaintiff has made a *prima facie* case that Defendant is subject to personal jurisdiction in New York pursuant to an enforceable forum selection clause. The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 12 and 29.

Dated: October 23, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge

[10] Because the Court denies Defendant's motion based on the existence of an enforceable forum selection clause, it need not consider Plaintiff's alternative argument that Defendant is subject to specific jurisdiction in New York. *See* Dkt. No. 35 at 22–24.